In re ONYX MOTOR CAR CORPORA-
TION dba: Bennett Chrysler Plymouth
aka: Upper Valley Dodge, Inc., Debtor.

CHRYSLER CREDIT
CORPORATION, Plaintiff,

v.

FIFTH THIRD BANK OF COLUMBUS,
et al., Defendants.

No. C2-89-01364,
Adv. P. No. 2-90-0035.

United States District Court,
S.D. Ohio, E.D.

June 26, 1990.

Joseph Charles Winner, Columbus, Ohio, for Chrysler Credit Corp.

Deborah Pitluk Ecker, Columbus, Ohio, for Onyx Motor Car Corp.

John Frederick Winkler, Columbus, Ohio, for Fifth Third Bank.

OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon a Motion for Withdrawal of Reference by Deborah P. Ecker, for Defendant Onyx Motor Car Corporation. Defendants make this motion pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011.

Upon consideration and being duly advised, this Court finds the Motion for Withdrawal of Reference, the request by defendants to consolidate the adversary proceeding from the Bankruptcy Court with a related case pending in the district court, and the request to stay the adversary proceeding in the Bankruptcy Court not well taken and are DENIED.

In early 1987, Onyx and Henry (Harry, as referred to by defendant's counsel) Bennett, the majority shareholders of Onyx Motor Car Corporation, executed documents in an effort to secure financing for the purpose of two automobile dealerships in Springfield, Ohio.

On March 31, 1987, Fifth Third Bank of Columbus issued a cashier's check in the amount of $1,275,666 for the purchase of the two dealerships from Greenfield Dodge, Inc. In return, Greenfield Dodge

transferred to Onyx all of its tangible or assignable assets, including the good will, opportunity and other intangible benefits of operating the dealerships. In return for the $1,275,666, Fifth Third received simultaneously from Henry Bennett and Ralph Marinacci, owners of Onyx, a note for $1,275,666. Fifth Third also received from the Onyx a guaranty of that note and a security interest in the Onyx assets to secure the guaranty and any subsequent debt to Fifth Third from Onyx.

On April 1, 1987, Onyx obtained a franchise for the dealerships from Chrysler Corporation and entered into an agreement with Chrysler Credit which included a 1.2 million dollar credit line for the purchase of the floor plan of vehicles. (It is from this agreement that the complaint was filed on February 3, 1989, in the District Court alleging breach of contract, breach of fiduciary duty, negligence, fraud, and breach of the Ohio Revised Code § 4517).

On November 24, 1987, Fifth Third, Onyx, and Messrs. Bennett and Marinacci restructured their loan agreement. Onyx executed notes to Fifth Third for $600,000 and $400,000 and instructed Fifth Third to apply the proceeds of the notes toward repayment of the $1,275,666 note. Mr. Bennett and Mr. Marinacci, who paid off the balance of the $1,275,666 note, guaranteed Onyx's repayment of the two new notes.

Onyx ultimately failed to repay the $600,000 and $400,000 notes, upon which more than $1,000,000 in principal and interest remains owing.

On March 10, 1989, Onyx filed a petition seeking bankruptcy protection under Chapter 11.

On May 24, 1989, Judge Calhoun entered an order approving a private sale of Onyx's dealerships and related assets. On September 29, 1989, $449,910.50 in proceeds from the sale were placed into an escrow account established by counsel for Onyx. On October 5, 1989, Fifth Third moved for relief from the stay in an attempt to enforce its security interest against the escrowed funds. Chrysler Credit objected, contending that it too had a security interest from Onyx.

On February 5, 1990, Chrysler Credit initiated the adversary proceeding against Fifth Third and Onyx to assert that its security interest is first, in a priority position, and that Onyx's transfer of the March 31, 1987 security interest to Fifth Third was a fraudulent conveyance. Fifth Third withdrew its motion for relief from stay and filed a counterclaim and a cross claim against Onyx asserting the validity and priority of its security interest.

On April 4, 1990, Onyx filed a Motion for Withdrawal of Reference, for Consolidation and for Stay of Proceeding.

## LAW AND ANALYSIS

■ Defendants come before this Court pursuant to 28 U.S.C. § 157(d) which provides, in pertinent part: "The district court may withdraw in whole or in part, any case or proceeding referenced under this section, on its own motion or on timely motion of any party for cause shown."

Bankruptcy Rule 5011(a) provides that "a motion for withdrawal of a case or proceeding shall be heard by a district judge." This matter is also in compliance with the provisions as set forth by the Southern District. See *In re The Bankruptcy Amendments and Federal Judgeship Act of 1984, No. MS–1–84–152 (S.D.Ohio, July 30, 1984).*

■ For a withdrawal of reference to be granted this Court will apply a two prong test which must be satisfied: (1) there must be a clear demonstration of "cause" and, (2) extraordinary circumstances.

### A. Cause

28 U.S.C. § 157(d) provides: "The district court *may* withdraw, in whole or in part, any case or proceeding referenced under this section, on its own motion or on timely motion of any party, *for cause shown.*" (emphasis added).

No statutory definition of "cause" is given in the statutes. Pertinent case law tends to be in general agreement as to the definition of "cause."

Courts have found "cause" shown to be satisfied by a furtherance of judicial economy. *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986) and *In re: Community Services, Inc.,* 86 B.R. 681 (D.Utah 1988).

In *Matter of Dunes Casino Hotel,* 63 B.R. 939 (D.N.J.1986) the Court held that "cause" may include factors such as convenience, judicial economy, and the knowledge of facts held by the Court.

Most encompassing is *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir.1985) which held that "cause" could include: the possibility of reducing confusion; considerations of judicial economy; fostering the economical use of the debtor's and creditor's resources; and the presence of a jury demand.[1]

█ It is the opinion of this Court that there are three appropriate factors contributing to a determination of "cause":

1) Judicial Economy;
2) Reducing Confusion; and
3) Economical Use of The Debtor's and Creditor's Resources.

If one, or a combination of these factors is satisfied, the Court may find that "cause" exists.

In the matter at hand, an analysis of the record and arguments set forth in briefs does not lead this Court to find the existence of "cause". None of the three standards as set forth above has been satisfied. Indeed, it is the opinion of this Court that a withdrawal of reference would violate the principles of judicial economy, add confusion, and the resulting delay may cause waste.

### B. Extraordinary Circumstances

Congress, in the 1984 Act, specifically established a constitutionally sound Bankruptcy Court and provided for judges to be specialists in this highly complex field of law. In doing so, it is incumbent upon the Court to utilize the bankruptcy judge's knowledge and expertise in bankruptcy law

matters to the fullest extent possible. To do any less would be a waste of scarce judicial resources.

The broad language of § 157(d) gives the Court significant discretion in the determination of a non-mandatory withdrawal of reference. However, in its consideration of this subsection the Congressional debate indicates that there was not an intention to allow § 157(d) to become "an escape hatch through which most bankruptcy matters will be removed "to the District Court from the bankruptcy court." 100 Cong.Rec. H1850.

Judge Porter in *In re Baldwin–United Corp.,* 57 B.R. 751 (S.D.Ohio 1985) was the first in the Southern District to definitively address this issue. In his opinion, the Court also took a narrow view of the likelihood of a party, when § 157(d) is applied to an attempt, to secure a mandatory or discretionary withdrawal of reference. Indeed, the Court found that the mere presence of nonbankruptcy issues or matters of law is not sufficient to justify a withdrawal of reference. *Id.*

█ Let it be clear, without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received by this Court.

In the instant matter, such circumstances are neither exceptional or compelling. Judge Calhoun's demonstrated abilities, significant experience, and familiarity with the facts and issues at hand well-position him to make an informed and sound judgment in accordance with the law.

### CONCLUSION

Consequently, for the aforementioned reasons, this Court must conclude that § 157(d) does not provide a segue from the bankruptcy court to the district court. There is no doubt that in the instant matter; the interest of all parties involved will be best served by the necessary decisions being made by the judge whose particular

---

**1.** This Court addressed the issue of jury demand in *Lee Way Holding Co. v. Luper,* 115 B.R. 386 (1990).

expertise and abilities will ensure the correct result.

The requests to consolidate and to stay the adversary proceeding were contingent upon granting the motion for withdrawal of reference and are, accordingly, rendered MOOT.

## ORDER

Accordingly, the motion for withdrawal of reference, the motion to consolidate with a related case pending in the District Court, and the request to stay the adversary proceeding in the Bankruptcy Court are hereby DENIED.

IT IS SO ORDERED.