927 F.2d 532
 59 USLW 2577, Bankr. L. Rep. P 73,871
 In re PARKLANE/ATLANTA JOINT VENTURE, Debtor.
PARKLANE HOSIERY COMPANY, INC., Plaintiff-Appellee,
v.
PARKLANE/ATLANTA VENTURE, Defendant,
James D. Silvers, Defendant-Appellant.
 No. 89-8609.
 United States Court of Appeals,
Eleventh Circuit.
 March 19, 1991.
 
 Frank B. Wilensky, Michael D. Pinsky, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for defendant-appellant.
 James Peyton Smith, Jerome L. Kaplan, Arnall, Golden & Gregory, Atlanta, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before JOHNSON and HATCHETT, Circuit Judges, and SMITH*, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Defendant James D. Silvers ("Silvers") appeals from the district court's order withdrawing this proceeding from the bankruptcy court.
 
 I. FACTS
 A. Background
 
 2
 In 1981, Silvers and plaintiff Parklane Hosiery Company, Inc. ("the plaintiff") executed an agreement creating a joint venture known as the Parklane/Atlanta Joint Venture ("the joint venture"). Pursuant to this agreement, the plaintiff leased five stores in the metropolitan Atlanta area for Silvers to operate. The relationship deteriorated, leading the plaintiff to file suit in the Superior Court of Fulton County. On January 5, 1989, the superior court entered an order dissolving the joint venture and requiring Silvers to turn over possession of the stores to the plaintiff within fifteen days. The order also instructed Silvers to retain control and possession of all inventory and revenues of the joint venture pending further order of the court. On January 19, 1989, one day before the turnover date, Silvers filed a Chapter 11 bankruptcy petition on behalf of the joint venture.
 
 B. Proceedings Before the District Court
 
 3
 The bankruptcy court assumed jurisdiction of Silvers' petition pursuant to Section 157(a) of Title 28.[1] The plaintiff filed responsive pleadings to the petition in the bankruptcy court. It simultaneously filed in the district court a motion to withdraw the reference, pursuant to 28 U.S.C.A. Sec. 157(d) (West Supp.1990), and a motion for abstention or, in the alternative, dismissal, pursuant to 11 U.S.C.A. Sec. 305 (West 1979).[2] The plaintiff argued that the bankruptcy court could not enter a Section 305 order because that section did not provide for appellate review by an Article III court. The district court agreed and granted the motion to withdraw the reference. It directed both parties to file additional briefs addressing the merits of the Section 305 motion to dismiss. Silvers filed a timely motion for reconsideration which the district court denied. Silvers subsequently appealed the district court's order to this Court. In this appeal, we address the issue of whether Article III of the United States Constitution prohibits a bankruptcy court from entering an order of abstention or dismissal pursuant to Section 305.
 
 II. ANALYSIS
 
 4
 This Court reviews the district court's determinations of law de novo. In re Sublett, 895 F.2d 1381, 1383 (1990).
 
 
 5
 A. Jurisdiction Over An Appeal Of An Order Withdrawing Reference
 
 
 6
 Before reaching the principal issue raised in this appeal, this Court must first determine whether it has jurisdiction. This Court has held previously that orders to withdraw reference are not appealable final orders unless they fall into one of the recognized exceptions to the final judgment rule. See In re King Memorial Hospital, Inc., 767 F.2d 1508, 1510 (11th Cir.1985). Under the collateral order exception, this Court may review those interlocutory orders that: (1) finally determine a claim separate and independent from the other claims in the action; (2) cannot be reviewed after the final judgment because by then effective review will be precluded and rights conferred will be lost; and (3) are too important to be denied review because they present a significant and unresolved question of law. In re King, 767 F.2d at 1510.
 
 
 7
 The instant order to withdraw easily meets the first and third requirements for review under the collateral order exception. The order to withdraw is separable from the other claims in this action and the question whether only an Article III court may grant a Section 305 motion to dismiss is certainly an unsettled question of law.[3] Moreover, the instant order meets the first part of the second prong of the collateral order exception. If the district court grants the plaintiff's Section 305 order to dismiss, its decision is unreviewable and this Court would be precluded from reviewing the order as part of an eventual final judgment. See 11 U.S.C.A. Sec. 305 (West 1979). Nevertheless, the crucial consideration under the collateral order exception is whether "rights conferred will be lost." In re King, 767 F.2d at 1510. Therefore, this Court must determine whether the order to withdraw deprives Silvers of rights sufficient to trigger our jurisdiction under the collateral order exception. We find that it does so and therefore hold that we have jurisdiction to hear this appeal under the collateral order exception.
 
 
 8
 The 1984 Bankruptcy Amendments placed jurisdiction for bankruptcy cases and proceedings in the district courts. See 28 U.S.C.A. Sec. 1334(a)-(b) (West Supp.1990). The Amendments also established the bankruptcy courts as "units" of the district courts and granted the district courts the discretion to refer Title 11 cases or proceedings to the bankruptcy courts. See 28 U.S.C.A. Secs. 151, 157(a) (West Supp.1990). Congress also gave district courts the discretionary authority to withdraw any case or proceedings from a bankruptcy court "for cause shown." See 28 U.S.C.A. Sec. 157(d).[4] It provided, however, no statutory definition for the term "cause."
 
 
 9
 Silvers, citing Section 157(d) as authority, claims a right of access to the expertise of the bankruptcy courts from the moment he filed the petition on behalf of the joint venture. Silvers contends that if he did not have a protectable interest in the expertise of the bankruptcy court, then Congress would have left withdrawal solely to the discretion of the district courts rather than requiring a showing of cause. He claims that, at the very least, once the bankruptcy court assumes jurisdiction the debtor has a protectable interest in the bankruptcy court's retention of its jurisdiction absent a showing of cause justifying withdrawal.
 
 
 10
 In his rush to establish his right of access to the bankruptcy court, Silvers ignores the fact that Congress has placed original jurisdiction over bankruptcy cases and proceedings in the district courts. See 28 U.S.C.A. Sec. 1334 (West Supp.1990). If Congress had intended to give debtors a right of access to bankruptcy courts, it would not have given the district courts the discretion over the bankruptcy courts' jurisdiction. See 28 U.S.C.A. Sec. 157(a) (West Supp.1990). In the face of the plain language of Sections 1334 and 157(a), a debtor cannot claim to have a right to the bankruptcy court's expertise from the moment he files a petition.
 
 
 11
 Once a bankruptcy court has assumed jurisdiction, however, a district court may withdraw reference only "for cause shown." See 28 U.S.C.A. Sec. 157(d) (West Supp.1990). Even though Congress provided no statutory definition of the word "cause", the courts have made it plain that this is not an empty requirement. See In re Onyx Motor Car Corp., 116 B.R. 89 (S.D.Ohio 1990) (held that withdrawal of reference must be conditioned upon a showing of cause); Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp., 106 B.R. 367 (D.Del.1989) (held movant must show cause as a predicate to withdrawal); In re Wedtech Corp., 94 B.R. 293 (S.D.N.Y.1988) (held cause must be shown for withdrawal); In re American Community Services, Inc., 86 B.R. 681 (D.Utah 1988) (held discretionary withdrawal must be predicated upon cause shown on a case by case basis). Thus, Silvers is correct that he has a right to the continued benefit of bankruptcy jurisdiction absent a showing of cause for withdrawal.[5] The district court's order therefore meets all three prongs of the collateral order exception. Consequently we have jurisdiction to review the district court's ruling that because Article III bars bankruptcy courts from issuing Section 305 orders it had cause to withdraw reference in order to consider the plaintiff's Section 305 motion.
 
 
 12
 B. The Bankruptcy Court's Authority to Issue Section 305 Orders
 
 
 13
 Section 305 of Title 11 of the United States Code declares in part:
 
 
 14
 (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if
 
 
 15
 (1) the interests of creditors and the debtor would be better served by such dismissal or suspension ...
 
 
 16
 (c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.
 
 
 17
 11 U.S.C.A. Sec. 305 (West 1979).
 
 
 18
 When it ordered the withdrawal of the instant case from the bankruptcy court, the district court reasoned, in accordance with Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that the 1984 Bankruptcy Amendments required that Article III courts have the authority to review all bankruptcy proceedings. The district court noted that the plaintiff's motion for dismissal under Section 305 is unreviewable and concluded that such a dismissal must be made by an Article III court.[6] The court therefore found "cause" justifying withdrawal of reference under 28 U.S.C.A. Sec. 157(d) (West Supp.1990).
 
 
 19
 In this appeal, Silvers argues that Congress may delegate to the bankruptcy court the authority to dismiss a case under Title 11 without review by an Article III court. Citing the Supreme Court's decisions in Northern Pipeline, supra.; Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985); Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 851-53, 106 S.Ct. 3245, 3256-58, 92 L.Ed.2d 675 (1986); and Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), Silvers argues that the Court has distinguished between public and private rights, permitting the adjudication of the former in non-Article III courts. He contends that Title 11 falls within the category of public rights and therefore that Congress may delegate the adjudication of Title 11 cases solely to the bankruptcy courts. Silvers concludes that an order pursuant to Section 305 need not be subject to review by an Article III court.[7] We do not agree.
 
 
 20
 The Supreme Court has never held that the restructuring of debtor-creditor relations is a public right. Granfinanciera, 492 U.S. at 56 n. 11, 109 S.Ct. at 2797 n. 11.[8] A majority of the Court has never endorsed the "public rights/private rights" bright line test for Article III analysis on which Silvers relies. See Thomas, 473 U.S. at 586, 105 S.Ct. at 3335. Moreover, the Northern Pipeline plurality left open the question of whether the resolution of even public rights disputes might demand some eventual review in an Article III tribunal. 458 U.S. at 70 n. 23, 102 S.Ct. at 2870 n. 23 (opinion of Brennan, J.); Thomas, 473 U.S. at 599, 105 S.Ct. at 3342 (Brennan, J., concurring). Therefore, we need not attempt to answer the question of whether a bankruptcy court may issue a Section 305 order by simply referring to this public rights/private rights dichotomy as Silvers would have us do.
 
 
 21
 As the Northern Pipeline plurality observed, "[t]he inexorable command of [Article III] is clear and definite: The Judicial Power of the United States must be exercised by courts having the attributes prescribed in Art. III." Northern Pipeline, 458 U.S. at 57-58, 102 S.Ct. at 2864-2865 (opinion of Brennan, J.). The question of whether a bankruptcy court may grant a Section 305 order raises the underlying issue of the scope of jurisdiction that the Article I bankruptcy court may constitutionally exercise. In Northern Pipeline the plurality opinion, citing Article III, held unconstitutional that portion of the Bankruptcy Reform Act of 1978 which granted the bankruptcy courts jurisdiction over all cases arising under or related to the bankruptcy laws, insofar as the Act authorized the bankruptcy courts to adjudicate traditional state-law contract claims related to bankruptcy proceedings. Northern Pipeline, 458 U.S. at 87, 102 S.Ct. at 2880 (opinion of Brennan, J.); id. at 91, 102 S.Ct. at 2881 (opinion of Rehnquist, J., concurring in judgment); see also Thomas, 473 U.S. at 584, 105 S.Ct. at 3334. The Northern Pipeline plurality observed that Article III commands that the judicial power of the United States be vested in courts which enjoy the safeguards of that article. Northern Pipeline, 458 U.S. at 62, 102 S.Ct. at 2866 (opinion of Brennan, J.). The plurality concluded that the Bankruptcy Reform Act of 1978 had placed virtually all of the judicial power of the United States in Article I bankruptcy courts in violation of Article III.
 
 
 22
 The 1984 Bankruptcy Amendments responded to these constitutional concerns by vesting jurisdiction over bankruptcy cases and related proceedings in the district courts. See 28 U.S.C.A. Sec. 1334(a)-(b) (West Supp.1990). Congress established the bankruptcy courts as units of the district court and gave the district courts the discretion to refer Title 11 cases to the bankruptcy courts and the authority to withdraw such cases for cause. 28 U.S.C.A. Secs. 151, 157 (West Supp.1990). By adopting this statutory scheme, Congress ensured that the judicial power of the United States would be ultimately exercised by an Article III court.
 
 
 23
 In light of the Supreme Court's decision in Northern Pipeline and its more recent opinion in Granfinanciera, it is unnecessary for this Court to reiterate that bankruptcy courts are not Article III courts and therefore may not exercise the judicial power of the United States. The entry of an order by the bankruptcy court to dismiss or suspend under Section 305 would terminate the district court's jurisdiction over the instant case without review by an Article III court. This would place the jurisdiction of an Article III court within the discretion of an Article I court. Such an order would be an impermissible exercise of the judicial power of the United States by a non-Article III court, see Northern Pipeline, 458 U.S. at 87, 105 S.Ct. at 2880 (opinion of Brennan, J.), and would frustrate the intent of the 1984 Bankruptcy Amendments.[9] Therefore, the district court did not err when it found that Article III barred the bankruptcy court from issuing a Section 305 order and granted the plaintiff's motion to withdraw the instant case from the bankruptcy court.
 
 
 24
 The bankruptcy courts exist to provide debtors and creditors with a specialized forum for the prompt and speedy resolution of bankruptcy proceedings. There is no question that they perform a necessary and useful service by minimizing the dislocation suffered by individual debtors and creditors as well as the economy as a whole. Nevertheless, Congress has vested original jurisdiction over cases and proceedings under Title 11 in the district courts. See 28 U.S.C.A. Sec. 1334(a)-(b) (West Supp.1990). The bankruptcy courts obtain jurisdiction over Title 11 cases or proceedings only by referral at the discretion of the district courts, and the district court may withdraw such reference for cause. See 28 U.S.C.A. Sec. 157 (West Supp.1990). As discussed above, this is not a hollow requirement.[10] Nevertheless, the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts, cf. Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 884 (11th Cir.1990) (held the district courts responsible for overseeing the bankruptcy courts).
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, we AFFIRM the district court's withdrawal of reference of this proceeding from the bankruptcy court.
 
 
 26
 EDWARD S. SMITH, Senior Circuit Judge, concurring:
 
 
 27
 I write separately, not because I disagree with the majority opinion in what it says, but because I feel constrained to place the stagelight of emphasis on a different spot.
 
 
 28
 Silvers filed an involuntary bankruptcy petition on behalf of the Parklane/Atlanta Joint Venture. The bankruptcy court assumed jurisdiction over the petition by means of a discretionary referral to an Article I unit of the Article III district court in accordance with 28 U.S.C.A. Secs. 151, 157(a) (West Supp.1990).
 
 
 29
 I have considered intensely arguments such as that which would resolve the issue at hand on the basis of Historical and Revision Notes, Senate Report No. 95-989, U.S.Code Cong. & Admin.News 1978, p. 5787, last paragraph, appended to 11 U.S.C. Sec. 305 (1988), a pre-1984 provision recognizing authority of the bankruptcy courts to decide matters of abstention without review, which provision survived the 1984 enactments.
 
 
 30
 The discretion to refer, possessed by the Article III district courts, is accompanied by the corresponding power to withdraw the reference. Although the latter power carries the additional requirement of cause shown, I perceive that requirement to be a limitation on discretion and not a limitation on jurisdiction. I understand the argument that a challenge to Constitutionality is one of legality and perceivably not the same as "cause"; but courts traditionally do not bring in the 16-inch guns of the Constitution when an issue may be resolved with a lesser application of power. The clarity of the district court's inherent jurisdiction to determine its own jurisdiction is unquestioned. U.S. v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Equally clear is "... [T]he power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). The district court may not be hamstrung in the exercise of its jurisdiction by a debate as to whether a showing, clearly sufficient, is "cause", is an "exercise of discretion", or is a Constitutional attack.
 
 
 31
 The discretion possessed by United States District Courts is broad, but discretion, as a power, is less absolute than jurisdiction. The requirement of cause shown, before discretion may be exercised, may not be so restrictive that it constitutes a transfer of jurisdiction which would be impermissible under the Constitution. Jurisdiction over bankruptcy cases is vested in the Article III district courts pursuant to 28 U.S.C.A. Sec. 1334(a)-(b) (West Supp.1990). After the tumultuous history of the bankruptcy court legislation, the jurisdiction footed in the district courts is as clear as a glass slipper and it may not be slipper-spooned onto the bankruptcy courts. I concur in the decision to affirm the district court.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 336 ("the 1984 Bankruptcy Amendments"), placed original jurisdiction for bankruptcy cases and proceedings in the district courts. See 28 U.S.C.A. Sec. 1334(a)-(b) (West Supp.1990). The 1984 Bankruptcy Amendments established the bankruptcy courts as "units" of the district courts and granted the district courts the discretion to refer Title 11 cases or proceedings to the bankruptcy courts. See 28 U.S.C.A. Secs. 151, 157(a) (West Supp.1990). A district court may withdraw reference of a Title 11 case or proceeding from the bankruptcy court, "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C.A. Sec. 157(d) (West Supp.1990)
 
 
 [2]
 For the text of Section 305, see Section II(B) infra
 
 
 [3]
 A number of courts have held that Article III precludes a bankruptcy court from issuing an order pursuant to Section 305. See In re Tri-County Farm Equipment Co., Inc, 87 B.R. 667 (D.Kan.1988); In re Colorado Industrial Bank of Loveland, 85 B.R. 855 (D.Colo.1988); In re Pankau, 65 B.R. 204 (Bankr.N.D.Ill.1986); In re Aaronics Equipment Rentals and Sales, Inc., 56 B.R. 297 (Bankr.M.D.La.1985). Tri-County, Colorado Industrial, and Pankau all rely either directly or indirectly on Aaronics. Aaronics is not persuasive, however, because the proceeding at issue was an adversary proceeding similar to the traditional private law proceeding that was the subject of Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (held unconstitutional that portion of 1978 Bankruptcy Reform Act which gave bankruptcy courts jurisdiction over state law claims). The proceedings in question in the instant case are solely those claims and rights created by the federal bankruptcy code
 Other courts have upheld a bankruptcy court's authority to enter nonappealable orders under Section 305. See Matter of Cash Currency Exchange, Inc., 762 F.2d 542, 555-56 (7th Cir.1985); Matter of Axona Int'l Credit and Commerce, Ltd., 88 B.R. 597 (Bankr.S.D.N.Y.1988); In re Safon Ochart, 74 B.R. 131 (Bankr.D.P.R.1986); and, In re Nexus Communications, Inc., 55 B.R. 596 (Bankr.E.D.N.C.1985). These cases are also not dispositive because the issue of the constitutional authority of a bankruptcy court to issue a Section 305 order was either not raised and not considered or raised and summarily dismissed without analysis. The exception is In re Safon Ochart. The Safon court stated, without citation to any authority, that Section 305 granted discretionary authority to the bankruptcy court. Safon, 74 B.R. at 134. Section 305 refers only to "the court"; it makes no direct reference to the bankruptcy court. Accordingly, we do not find the Safon holding persuasive.
 
 
 [4]
 Section 157(d) also provides for mandatory withdrawal if the district court determines that "resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." See 28 U.S.C.A. Sec. 157(d) (West Supp.1990)
 
 
 [5]
 Although this Court has not yet articulated criteria for determining the existence of cause for withdrawal, other courts have. In Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir.1985), the Fifth Circuit noted in dicta that in determining whether cause existed a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process. Id. at 998; accord In re Onyx, supra; Hatzel & Buehler, supra; In re Wedtech Corp., supra
 
 
 [6]
 Courts are divided on this question. See n. 3 supra
 
 
 [7]
 Silvers, citing Granfinanciera, 109 S.Ct. at 2798-99, also argues that because the plaintiff has filed an answer to the involuntary petition it has therefore waived any objection to the bankruptcy court's jurisdiction. We do not agree. Bankruptcy Rule 1011(a) authorizes a nonpetitioning general partner to contest an involuntary petition. If the general partner does not file a responsive pleading, Bankruptcy Rule 1013(b) authorizes the bankruptcy court to enter an order for relief or default. Section 157(d) expressly permits any party to make a timely motion to withdraw. The plaintiff filed its motion to withdraw with the district court simultaneously with its responsive pleadings. The plaintiff did not waive its objection to the bankruptcy court's jurisdiction simply by following the commands of the Bankruptcy Rules while at the same time exercising its rights under Section 157. Accordingly, this argument is without merit
 
 
 [8]
 As the Ninth Circuit has noted, certain aspects of the administration of a bankruptcy estate do not conform easily to the Northern Pipeline plurality's definition of public rights. In re Mankin 823 F.2d 1296, 1307 (9th Cir.1987). For example, unlike such congressionally created rights as radio licenses, "the grant of a discharge in bankruptcy directly alters and often abrogates pre-existing, legally cognizable property rights. It would be foreign to our constitutional system to allow the type of property rights ordinarily possessed by creditors to be determined exclusively by the legislative or executive branches of government." Id. (citation omitted)
 
 
 [9]
 Silvers can draw no support for his position by his citation to the legislative history of Section 305. This section was drawn without amendment from H.R. 8200, the original version of the House of Representatives' bill that subsequently became the Bankruptcy Reform Act of 1978. In H.R. 8200, the House proposed that bankruptcy judges be made Article III judges. H.R.Rep. No. 595, 95th Cong., 2d Sess. 21-22, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 5983. If that had occurred, there would be no reason to litigate this question today
 
 
 [10]
 See section II(B), supra