**In re FINEVEST FOODS, INC., et al., Debtors.**

**LAND–O–SUN DAIRIES, INC., Plaintiff,**

**v.**

**FLORIDA SUPERMARKETS, INC., d/b/a Pantry Pride, Defendant.**

**United States of America, Intervenor.**

**Bankruptcy Nos. 91–614–BKC– 3P1 to 91–619–BKC–3P1. Adv. No. 91–3303.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 19, 1992.

See also 140 B.R. 581.

Raymond R. Magley, Smith, Hulsey & Busey, Jacksonville, Fla., for plaintiff.

Raymond C. Farfante, Jr., Rumberger, Kirk, Caldwell & Wechsler, P.A., Tampa, Fla., for defendant.

John T. Stemplewicz, Civ. Div., Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

On December 20, 1991, plaintiff filed a complaint to recover money or property

from defendant. Defendant responded by filing a Motion to Dismiss challenging the constitutionality of 28 U.S.C. § 157(b). This Court issued an Order on February 25, 1992, certifying the challenge of 28 U.S.C. § 157 to the United States Attorney General as required under 28 U.S.C. § 2403(a). An Order Granting the United States' Motion to Intervene was entered on April 13, 1992. A hearing on defendant's Motion to Dismiss was heard on July 15, 1992, and, upon the evidence and argument, the Court enters the following Memorandum Opinion:

## FACTS

Debtor Land–O–Sun filed this adversary proceeding seeking payment for the sale of dairy products by plaintiff to defendant. The transactions at issue occurred prior to the filing of plaintiff's chapter 11 petition. The complaint consists of four counts: (1) an action for turnover of a $558,629.76 debt; (2) goods sold and delivered; (3) goods sold on open account; and (4) goods sold on account stated. Defendant has not answered but has moved to dismiss the complaint on various grounds including lack of jurisdiction. The United States intervened to address defendant's challenge to the constitutionality of 28 U.S.C. § 157.

The sole issue before the court is whether 28 U.S.C. § 157 violates Article III of the United States Constitution by allowing a bankruptcy judge, sitting as an adjunct to an Article III court, to adjudicate pre-petition contract claims asserted by the debtor.

## DISCUSSION

### I. Statutory Background

A. The Bankruptcy System Before 1978

The Constitution empowers Congress to establish "uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4. Congress passed the first federal bankruptcy act in 1800. *See* 2 Stat. 19 (1800). The federal bankruptcy system in effect throughout most of this century was based

upon the Bankruptcy Act of 1898, 30 Stat. 544 ("1898 Act").

Under the 1898 Act, district courts served as "courts of bankruptcy" and possessed original jurisdiction over bankruptcy cases. 30 Stat. 544, 546. Although the district courts were the repositories of bankruptcy jurisdiction, the courts generally referred bankruptcy matters to referees for initial adjudication.[1] *Id.* at 555–56. Referees' final orders were appealable to the district courts. Bankruptcy Rule 801 (superseded). The district courts retained the power "at any time" to withdraw the bankruptcy case in whole or in part from the referee. Bankruptcy Rule 102(b) (superseded). Finally, both the appointment and the removal of the referees were in the hands of the district court. 30 Stat. 544, 555.

The 1898 Act, as amended, vested the district courts with "summary" jurisdiction over controversies involving property in the actual or constructive possession of the court. *See Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). Summary jurisdiction meant that the court and/or its referee could deal with the matter in "summary fashion," (*i.e.*, without a jury trial). *Id.* Controversies regarding creditors who did not file a claim, and where the property in dispute was not within the actual or constructive possession of the court, were adjudicated as "plenary action[s]" (*i.e.*, with full procedural and jury trial rights). *Id.* at 327–28, 86 S.Ct. at 471–72.

B. The Bankruptcy Reform Act of 1978

In 1978, Congress passed the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 ("Reform Act"). This comprehensive revision of the bankruptcy laws eliminated the referee system. *Id.* at 2682–83. Under the Reform Act, bankruptcy jurisdiction was conferred upon the district courts. *Id.* at 2668. However, the jurisdictional grant to the district courts was immediately followed by a provision which delegated *all* bankruptcy jurisdiction

---

1. The bankruptcy referees were redesignated as "judges" in 1973 by Bankruptcy Rule 901(7)

(superseded), 11 U.S.C.App. 1358 (1976).

to the new United States Bankruptcy Courts. *Id.* The district courts had no power to recall or assign bankruptcy cases and were to function purely in an appellate capacity. *Id; see also id.* at 2682–87 (transition period).

The Reform Act not only delegated to the district courts jurisdiction over bankruptcy cases but also stripped the district courts of their administrative powers over the bankruptcy judges. While under the 1898 Act bankruptcy referees were appointed and removed solely by the district court, the judges of the new bankruptcy courts were to be appointed for 14 year terms by the President with the advice and consent of the Senate. *Id.* at 2657.

### C. Marathon and the Emergency Reference Rule

The bankruptcy court system contemplated by the Reform Act was never realized. In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that Congress' broad grant of jurisdiction to the new bankruptcy courts unconstitutionally conferred too much of the Article III judicial power on non-Article III officers. Because the Court could not divide the jurisdictional grant to the new bankruptcy courts into constitutional and unconstitutional components, it struck down the grant in its entirety. *Id.* at 87–88 n. 40, 102 S.Ct. at 2880 n. 40.

In order to keep the bankruptcy system functioning after *Marathon,* the district courts adopted a model "Emergency Rule" for referring bankruptcy cases and proceedings to bankruptcy judges. The Emergency Rule substantially revived the adjunct system in existence before the Reform Act. The Rule assumed that all subject matter jurisdiction vested in the Article III district courts and none was relegated exclusively and finally to bankruptcy judges. The Rule permitted the district courts to refer all bankruptcy matters to bankruptcy judges, but the district courts retained the power to withdraw the reference "at any time" either *sua sponte* or on motion by a party. Emergency Rule (c).

The Emergency Rule distinguished between traditional bankruptcy matters and those only "related" to a bankruptcy case for purposes of defining the scope of the bankruptcy courts' adjudicatory power. Emergency Rule (d)(3)(A). The bankruptcy judge could not enter a final judgment without the parties' consent in a "related" proceeding. Emergency Rule (d)(3)(B). Any other order of a bankruptcy judge was effective when entered. Emergency Rule (d)(2). In reviewing any bankruptcy court order, the district judge was empowered to hold a hearing, receive additional evidence and could, in effect, decide the appropriate standard of review since the district court could "give no deference to the findings of the bankruptcy judge." Emergency Rule (e)(2)(B).

### D. The Bankruptcy Amendments and Federal Judgeship Act of 1984

On July 10, 1984, the President signed H.R. 5174, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("1984 Act"). The 1984 Act conferred bankruptcy jurisdiction upon the district court in a new jurisdictional section codified at 28 U.S.C. § 1334. 98 Stat. 333. The 1984 Act also created a new bankruptcy court system. *See* 28 U.S.C. §§ 151–158. Instead of bankruptcy judges being appointed and removed by the executive branch, as under the Reform Act, the new system vests these powers in Article III officials. Bankruptcy judges are appointed by the Article III Court of Appeals for the applicable circuit and can be removed only by the Circuit Judicial Council. § 152(a)(1), (e).

The bankruptcy court system created by the 1984 Act is patterned closely upon the Emergency Rule. As under the Emergency Rule, the district court is empowered, but not required, to refer all bankruptcy cases to the district's bankruptcy judges. § 157(a). On its own motion or that of a party, the district court may withdraw, "in whole or in part," any case or proceeding so referred for "cause shown." § 157(d).

Also, like the Emergency Rule, the 1984 Act divides bankruptcy proceedings into two categories, "core" proceedings and

"non-core" matters "otherwise related" to the bankruptcy case. § 157(b), (c). Core proceedings are not defined but appear to be co-extensive with the cases designated by the jurisdictional grant of matters "arising in" or "arising under" the bankruptcy laws. *Compare* § 157(b)(1) *with* § 1334(b). The Act provides several examples of core proceedings. § 157(b)(2).

The bankruptcy judge may adjudicate core proceedings and enter final orders subject to review of the district court. § 157(b)(1). For non-core proceedings, the process is again nearly identical to that under the Emergency Rule: the bankruptcy judge may hear the proceeding but only recommend a disposition to the district court which enters any final judgment after reviewing *de novo* matters to which a party has objected. § 157(c)(1). The power of a bankruptcy judge to exercise the authority conferred by chapter 6 of title 28 is specifically subject to any "rule or order of the district court." § 151.

## II. Allowing Bankruptcy Court to Hear and Determine Proceedings Does Not Deprive the Article III District Court of the Essential Attributes of Judicial Power Over Bankruptcy Matters

The 1984 Act was carefully crafted to avoid the constitutional pitfalls exposed by the Supreme Court in *Marathon*. The Act restricts the power of bankruptcy judges and retains the opportunity for adjudication by an Article III judge ensuring that the "essential attributes" of judicial power are retained in the Article III court. *See generally Marathon*, 458 U.S. at 77–81, 102 S.Ct. at 2874–77. Thus, even if only private rights are adjudicated, the 1984 Act's adjunct system is constitutional. *Cf. Atlas Roofing Co. v. Occupational Safety & Health Review Com.*, 430 U.S. 442, 450 n. 7, 97 S.Ct. 1261, 1266 n. 7, 51 L.Ed.2d 464 (1977) (agency may adjudicate matters of private right as adjunct of Article III court); *but cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 n. 10, 109 S.Ct. 2782, 2797 n. 10, 106 L.Ed.2d 26 (1989) (adjunct cannot be used to deprive litigant of Seventh Amendment right to jury). That principle also accords with this

Court's decision in *In re Kindorf*, 113 B.R. 734 (Bankr.M.D.Fla.1990). *Cf. In re Holywell Corp.*, 93 B.R. 780 (S.D.Fla.1988) (rejecting constitutional challenge to core treatment and dismissal of common law action for breach of fiduciary duty), *aff'd*, 881 F.2d 1086 (11th Cir.1989), *cert. denied*, 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990).

## A. Under 1984 Act, Essential Attributes of Judicial Power Remain with Article III District Court

The 1984 Act differs materially from the Reform Act challenged in *Marathon*. The *Marathon* plurality compared unfavorably the bankruptcy system established by the Reform Act with the 1898 Act which preceded it. *See* 458 U.S. at 79 n. 31, 102 S.Ct. at 2876 n. 31. The 1984 Act removes the objectionable features of the Reform Act and adopts many aspects of the old referee system of which the plurality spoke approvingly. The current legislation therefore passes constitutional muster even under the *Marathon* plurality's exacting standards.

Bankruptcy referees under the 1898 Act were adjuncts of the district court. *Marathon*, 458 U.S. at 79–80 n. 31, 102 S.Ct. at 2876 n. 31 (plurality opinion) ("bankruptcy referees were appointed and removable only by the district court * * * [a]nd the district court retained control over the reference by his power to withdraw the case from the referee"). Under the referee system, the Article III requirement of an independent judiciary was ensured because, "even at the trial stage, the parties had access to an independent judicial officer." *Id.*

The plurality's favorable description of the old referee system supports the constitutionality of the 1984 Act. Under the Reform Act, the executive branch appointed bankruptcy judges; however, Article III judges now appoint and remove bankruptcy judges. *See* 28 U.S.C. § 152; *Guercio v. Brody*, 911 F.2d 1179, 1185–86 (6th Cir. 1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991). Placing the appointment and removal authority in the

hands of the judicial branch substantially diminishes the risk of potential domination or influence by the other branches of government. *See In re Mankin*, 823 F.2d 1296, 1309–10 (9th Cir.1987), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *cf. Commodity Futures Trading Com. v. Schor*, 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986). Indeed, that magistrates are appointed and subject to removal by Article III judges was highly probative for the Supreme Court's holding that their use does not implicate the structural protection of Article III. *Peretz v. United States*, —— U.S. ——, ——, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991).

Furthermore, under the Reform Act the bankruptcy courts themselves exercised the bankruptcy jurisdiction and were virtually independent of the district courts, *Marathon*, 458 U.S. at 79–80 n. 31, 102 S.Ct. at 2876 n. 31, but under the 1984 Act the district courts alone possess jurisdiction over bankruptcy matters. *See* 28 U.S.C. §§ 151, 157, 1334. By law, bankruptcy judges are today "unit[s]" of the district court. *Id.* § 151. The district courts may refer some, all, or no bankruptcy proceedings to the bankruptcy court; may withdraw a bankruptcy case at any time in their discretion, 28 U.S.C. § 157(a), (d); and may exercise jurisdiction over withdrawn cases to the exclusion of the bankruptcy courts.

■ Thus, even if the district court refers all "core" bankruptcy proceedings to the bankruptcy court, it may either review the bankruptcy court's decision as if it were an appellate court or, in its discretion, withdraw the reference as to a particular case or proceeding. After withdrawal, the district court can exercise complete authority over the case or proceeding. Further, under 28 U.S.C. § 151, the district court retains the unqualified power to limit the bankruptcy court's authority by rule of order. For example, under § 151, the district court could condition its reference of a particular core proceeding on the retention of *de novo* review.

In *In re Committee of Unsecured Creditors of F S Communications Corp.*, 760

F.2d 1194 (11th Cir.1985), the Eleventh Circuit upheld the bankruptcy court's jurisdiction under the Emergency Rule promulgated after *Marathon*, which virtually parallels the jurisdictional provisions of the 1984 Act. The Court relied upon the fact that under the Emergency Rule the "district courts * * * retain control over bankruptcy matters sufficient to avoid bankruptcy courts exercising the 'essential attributes' of Article III courts." *Id.* at 1199. In deciding a similar case, the Sixth Circuit noted that the district court's authority to "revoke the referral" of a bankruptcy proceeding and power to apply less deferential than clearly erroneous review act to "ensure that the parties receive a just resolution of bankruptcy cases within the limitations established by Article III." *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 263 (6th Cir.1983).

As under the Emergency Rule, the 1984 Act places jurisdiction with the district court and the bankruptcy court's jurisdiction is wholly derivative. In addition, the district court may withdraw the reference and retains the authority to supply less deferential than clearly erroneous review to even core matters. Functionally, the district court has a large degree of control over the bankruptcy court and substantial discretion in reviewing decisions of a bankruptcy judge. Accordingly, just like the Emergency Rule, the 1984 Act does not offend the limitations established by Article III.

In sum, the 1984 Act largely returns the bankruptcy judges to their previous role as adjuncts of the district courts. *In re Bertoli*, 812 F.2d 136, 139 (3d Cir.1987); *see also White Motor Corp.*, 704 F.2d at 264. To paraphrase the *Marathon* plurality, bankruptcy litigants under the 1984 Act have access to an independent judicial officer even at the trial stage. *See Marathon*, 458 U.S. at 79 n. 31, 102 S.Ct. at 2876 n. 31 (plurality opinion). As the Supreme Court recently stated in regard to the use of magistrates:

Because the entire process takes place under the district court's total control * * * there is no danger that use of the

magistrate involves a congressional attempt to transfer jurisdiction to non-Article III tribunals for the purpose of emasculating constitutional courts.

*Peretz,* —— U.S. at ——–——, 111 S.Ct. at 2669–70 (internal quotation marks and citations omitted).

### B. District Court's Review Powers Satisfy Article III

"In cases specifically involving the Judicial Branch," the Supreme Court has been vigilant against two dangers:

> [F]irst, that the Judicial Branch neither be assigned nor allowed "tasks that are more properly accomplished by [other] branches," *Morrison v. Olson,* 487 U.S. [654, 680, 108 S.Ct. 2597, 2613, 101 L.Ed.2d 569 (1988)], and, second, that no provision of law "impermissibly threatens the institutional integrity of the Judicial Branch." *Commodity Futures Trading Com. v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 3257, 92 L.Ed.2d 675 (1986).

*Mistretta v. United States,* 488 U.S. 361, 383, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989). The 1984 Act presents neither danger.

Defendant does not contend that the 1984 Act burdens the judiciary with work it is unsuited to perform. Its argument is that the Act withdraws from the superintendence of Article III judges matters solely within their province.

The 1984 Act, however, does not limit district court involvement in bankruptcy matters. The provision in 28 U.S.C. § 157(b)(1) that "[b]ankruptcy judges may hear and determine" core proceedings must be read together with § 151, which provides that such authority may be exercised "except as otherwise provided by * * * rule or order of the district court." The latter provision permits the district court to retain *de novo* review over all proceedings referred to the bankruptcy court, even core proceedings. Also, § 158 permits district courts to exercise appellate review over bankruptcy court decisions.

To say that these provisions threaten the institutional integrity of the judiciary mistakes a power for a constraint. As in *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980), where the Supreme Court rejected an Article III challenge to a magistrate's authority to hear a suppression motion in a criminal case and to make proposed findings and recommendations to the district court concerning the proper disposition of the motion, "the entire process takes place under the district court's total control and jurisdiction." *Id.* 447 U.S. at 681, 100 S.Ct. at 2415. "[T]he only conceivable danger of a 'threat' to the 'independence' of the magistrate comes from within, rather than without, the judicial department." *Id.* at 685, 100 S.Ct. at 2417 (Blackmun, J., concurring).

Where the Article III judiciary controls the appointment and dismissal of the adjunct bankruptcy judges and possesses original jurisdiction over all bankruptcy matters, the unfettered discretion to refer or withhold that jurisdiction, and plenary authority over the exercise of that jurisdiction, and where appellate review in Article III courts is available as a matter of right, the Constitution is satisfied. Article III does not require that courts staffed by life-tenured judges protected against salary reduction themselves adjudicate from start to finish all cases within the federal judicial competence. The Framers' omission of any requirement that Congress establish federal trial courts makes that point clear; indeed, the lower federal courts did not enjoy federal question jurisdiction until 1875, Act of Mar. 3, 1875, § 1, 18 Stat. 470. Article III thus invites the holding that "the Constitution gives Congress wide discretion to assign the task of making the initial decision in a case arising under federal law to administrative agencies, but requires judicial review to assure the supremacy of law." Bator, *The Constitution As Architecture: Legislative and Administrative Courts Under Article III,* 65 Ind.L.J. 233, 269 (1989); *see also* Chemerinsky, *Ending the Marathon: It Is Time to Overrule Northern Pipeline,* 65 Am.Bankr.L.J. 311, 312–17 (1991).

In *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the Supreme Court made clear that Article III is satisfied when an administrative agency's decision is subject to review by an Article III court to ensure that the law has been properly construed and applied. The Court stated that "there is no requirement that, in order to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges." *Id.* at 51, 52 S.Ct. at 292. Accordingly, the Court held that a non-Article III agency could make factual determinations under a workers' compensation act. *Id.* at 60–61, 52 S.Ct. at 296.

█ Thus, providing an Article III court the authority to refer bankruptcy matters to an adjunct bankruptcy judge subject to appellate review does not offend the constitutional requirement that "judicial power" be exercised by Article III officers. As a result, even erroneous treatment of non-core, related proceedings as core should not raise constitutional concerns as a number of courts have stated in *dicta. See, e.g., In re Johnson*, 960 F.2d 396, 402 (4th Cir. 1992). The substantial power, control and review possessed by the district court ensures that, even if a related matter were afforded "core" treatment, the Article III court would retain at all times the essential attributes of judicial power, and thus no constitutional violation would occur.

### C. Bankruptcy Judges Serve an Important Role As Adjuncts to the Article III District Courts

The need is compelling for adjunct bankruptcy judges to have the power to hear and determine cases and proceedings referred to them by district courts. In 1991, 880,399 bankruptcy petitions were filed, and the pending caseload rose to an all-time high of 1,123,433 petitions. *1991 Annual Report of the Director of the Administrative Office of the United States Courts* 104–05. On July 1, 1991, 102,366 adversary proceedings were pending under the Bankruptcy Code. *Id.* at 298. If district courts cannot refer bankruptcy proceedings to adjunct bankruptcy courts, Con-

gress could provide a forum by increasing the number of Article III judgeships by approximately fifty percent (add the 291 authorized bankruptcy judgeships to the 649 authorized Article III judgeships). *Id.* at 126–28.

Bankruptcy judges perform a vital role in assisting the district court in bankruptcy matters. *See In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 538 (11th Cir.1991). The 1984 Act properly allows the Article III officer to retain control and authority over bankruptcy proceedings, while also allowing the adjunct bankruptcy judge to provide meaningful assistance to the district court. As the court held in *White Motor Corp.*, Article III is not violated "when bankruptcy courts with derivative jurisdiction assist the district courts." 704 F.2d at 263.

### III. Delegation of Non–Core Proceeding to Bankruptcy Judges For Recommended Disposition is consistent with Article III

The characteristics of the 1984 Act which combine to satisfy Article III concerns in the case of core proceedings are equally applicable to the non-core proceedings assigned to bankruptcy judges with one additional factor. Non-core proceedings are those not traditional adjudicated by a bankruptcy court but "otherwise related" to the bankruptcy proceeding. 28 U.S.C. § 157(c)(1); *In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir.1990). Because such proceedings may not be as susceptible as core proceedings to congressional control over the manner of their adjudication, Congress provided an additional "fail-safe" measure to insure the constitutionality of the bankruptcy judges' handling of such matters.

The bankruptcy judge may not enter a final judgment in a non-core, "related" proceeding but instead renders only a recommended disposition. 28 U.S.C. § 157(c). The district court must enter any final judgment after reviewing *de novo* any findings to which a party objects. *Id.* In prescribing these special procedures, the drafters were guided by *United States v.*

*Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). 130 Cong.Rec. H1848 (daily ed., Mar. 21, 1984) (statement of Rep. Kindness). There, the Supreme Court considered the constitutionality of a reference to a magistrate to preside at a hearing concerning the voluntariness of a criminal's confession. The magistrate was limited to making a recommended disposition to the district judge who entered the final order after a *de novo* review. In upholding this process in the face of an Article III challenge, the Supreme Court emphasized that this procedure ensures that the ultimate decision is made by the district court. *Id.* at 683, 100 S.Ct. at 2416. The plurality in *Marathon* contrasted the system established by the Reform Act unfavorably with the system approved in *Raddatz:*

> The Court observed [in *Raddatz*] that the magistrate's proposed findings and recommendations were subject to *de novo* review by the district court, which was free to rehear the evidence or to call for additional evidence. Moreover, it was noted that the magistrate considered motions only upon reference from the district court, and that the magistrates were appointed and subject to removal, by the district court. In short, the ultimate decision making authority * * * clearly remained with the district court.

*Marathon,* 458 U.S. at 79, 102 S.Ct. at 2875 (citations omitted). The features of the magistrate system that the plurality in *Marathon* felt were significant in *Raddatz* precisely describe the treatment of related cases under the 1984 Act. *See In re Davis,* 899 F.2d 1136, 1141 n. 10 (11th Cir.), *cert.*

*denied,* — U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990). Indeed, the *de novo* review process in the Magistrates Act is the same as in the 1984 Act. *Compare* Bankruptcy Rule 9033(d) *with* 28 U.S.C. § 636(b)(1).

In sum, the special treatment afforded non-core, related proceedings ensures that an Article III judge enters the final order after a *de novo* review of the evidence. This limitation, coupled with the plenary control over bankruptcy proceedings and courts by Article III judges and the extreme specialization embraced within the delegation further satisfies Article III concerns.

## CONCLUSION

For the above reasons, the adjudicatory power conferred upon bankruptcy judges under 28 U.S.C. § 157 accords fully with the United States Constitution.

Since the authority of bankruptcy judges to hear both core and non-core matters comports with the requirements of Article III, a determination of the specific nature of this proceeding is not needed for the Court's ruling at this time.

A separate order denying defendant's Motion to Dismiss will be entered.