### In re TPI INTERNATIONAL AIRWAYS, INC., Debtor.

### TPI INTERNATIONAL AIRWAYS, INC., Plaintiff,

### v.

### FEDERAL AVIATION ADMINISTRATION; Department of Transportation; United States Air Force; Department of Justice; The United States of America; Harry D. Dixon; Ruth Hearn Young; Michael E. Shaheen; Marcia W. Johnson; John H. Cassaday; Martin M. Kelly; Lawrence H. Brinker; Dennis E. Dutch; Lee H. Dayton; and Robert L. Wright, Defendants.

No. MC298–8.

United States District Court,
S.D. Georgia,
Brunswick Division.

May 13, 1998.

Frederick R. Catchpole, President, TPI International Airways, Inc., Brunswick, GA, Pro se.

James R. Schulz, Asst. U.S. Atty., Atlanta, GA, for Defendants.

## ORDER

ALAIMO, District Judge.

Frederick Catchpole ("Catchpole") brought this Amended Adversary Proceeding as majority shareholder in a derivative action on behalf of Plaintiff/Debtor, TPI International Airways, Inc. ("TPI"). Currently before the Court are a variety of motions filed by Catchpole including Motion to Remove Claims from Bankruptcy and Declaratory Judgment, Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Motion for Judicial Notice pursuant to Federal Rule of Evidence 201, and Motion to Strike Defendants' Response to Motion for Summary Judgment. For the reasons set forth below, Catchpole's Motion to Remove Claims from Bankruptcy will be **DENIED,** and Catchpole's remaining motions will be **DISMISSED** as **MOOT.**

### FACTS

TPI is an air cargo carrier that filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Georgia ("bankruptcy court") on February 21, 1991. (S.D.Ga. Case No. 91–20162). TPI did not have the required certifications and authority it needed to operate as an air carrier and was forced into bankruptcy. "In order to be a certified carrier and to conduct flight operations, TPI must have an air carrier operating certificate and operations specifications from the FAA [Federal Aviation Administration]. Additionally, TPI must have a separate certificate of public convenience and necessity, 'economic authority' from the Department of Transportation ('DOT')." *In re TPI Intern. Airways, Inc.,* 141 B.R. 512, 514 (Bankr.S.D.Ga.1992) (citations omitted). The bankruptcy case still is pending in the bankruptcy court.

This story began in Atlanta in August 1990 when TPI officials met with officials from the FAA to discuss potential safety violations. The FAA advised TPI that such concerns could lead to the suspension or revocation of TPI's operating specifications. TPI voluntarily surrendered its operating specifications and ceased its flight operations. At the same time, the DOT suspended TPI's certificate of public convenience and necessity. In May 1991, the FAA returned TPI's operating specifications, but the DOT refused to return the certificate of public convenience and necessity because it was conducting a fitness review of TPI. Accordingly, TPI could not resume its flight operations.

In July 1991, TPI filed an Adversary Proceeding against the FAA in the bankruptcy court. In Count One, TPI objected to the FAA's proof of claim for $810,000 in civil penalties filed in the Chapter 11 case. Count Two was a claim for monetary damages TPI allegedly suffered as a result of the loss of its operating specifications. TPI alleged that the FAA misrepresented the extent of TPI's safety violations and forced TPI to surrender its operating specifications without due process of law. The bankruptcy court dismissed Count Two of the adversary proceeding. *In re TPI Intern. Airways, Inc.,* 141 B.R. 512, 521 (Bankr.S.D.Ga.1992). On December 23, 1997, Catchpole moved to amend the Adversary Proceeding to add a third count. In that count, Catchpole demanded monetary damages in the amount of twenty million dollars. Catchpole alleged that the Defendants conspired against TPI in violation of O.C.G.A. § 16–14–1 (1996) and that Defendant, Ruth Hearn Young, violated 18 U.S.C.A. § 208 (Supp.1998). The bankruptcy court denied Catchpole's Motion to Amend. *In re TPI Intern. Airways, Inc.,* (Bankr.S.D.Ga.1998) (order denying motion to amend).

### DISCUSSION

#### I. *Withdrawal of Claims from Bankruptcy Court*

On March 2, 1998, Catchpole filed a motion with the Court entitled "Motion for Removal

of Claims related to Bankruptcy Case." In that motion, Catchpole requests that the Court "accept the removal of the Adversary Proceeding" from the bankruptcy court. Specifically, Catchpole demands that the Court "remove" Counts One and Three of the Adversary Proceeding. However, there is no procedure to "remove" claims from a bankruptcy court to a district court.[1] Since Catchpole is proceeding *pro se,* the court shall be guided by the long-standing principle that *pro se* pleadings are entitled to liberal construction. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *Walker v. Dugger,* 860 F.2d 1010, 1011 (11th Cir.1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1162, 103 L.Ed.2d 220 (1989). Therefore, the Court will construe Catchpole's motion to be a Motion to Withdraw Reference from Bankruptcy pursuant to 28 U.S.C. § 157(d) (1993). Additionally, since the bankruptcy court denied Catchpole's Motion to Amend to add Count Three, the only count before the Court for withdrawal is Count One, the challenge to the FAA's proof of claim for the civil penalties.

 In order to determine if the Court should withdraw reference, a basic understanding of the bankruptcy court system is required. The relationship between bankruptcy courts and federal district courts is based on two fundamental principles. First, Congress created substantial federal rights in the bankruptcy code, and by nature of their creation, Congress possesses "substantial discretion to prescribe the manner in which that right may be adjudicated." *In re Roper,* 203 B.R. 326, 334 (Bankr.N.D.Ala.

1996) (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871–72, 73 L.Ed.2d 598, 615 (1982)). Second, Congress' discretion is limited by the concept that the "essential attributes of judicial power are retained by Article III judges." *Id.* (quoting *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871–72, 73 L.Ed.2d at 615). The relationship between bankruptcy courts and district courts in bankruptcy matters is clearly defined. Bankruptcy courts are designed to provide debtors and creditors with a specialized forum for the prompt resolution of bankruptcy issues. *In re Parklane/Atlanta Joint Venture,* 927 F.2d 532, 538 (11th Cir.1991). District courts, however, serve in a supervisory and appellate capacity. *Id.*

In 1984, Congress passed the Bankruptcy Amendments and Federal Judgeship Act, which established that bankruptcy courts were units of federal district courts, to which a district court may refer any and all cases relating to bankruptcy. Pub.L. 98–383, 98 Stat. 333 (1984). *See also In re Roper,* 203 B.R. at 334. The Act contained 28 U.S.C. § 157 prescribing when and how matters could be referred. Pursuant to that Act, this district adopted a general reference order on July 13, 1984 that referred all bankruptcy matters to the bankruptcy courts of this district as of July 11, 1984.

Congress, however, provided for the withdrawal of certain cases from bankruptcy courts to district courts. 28 U.S.C. § 157(d). Section 157(d) provides that

[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on

---

1. Catchpole brought the motion pursuant to 28 U.S.C.A § 1452(a) (1994) that provides:

[a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Section 1452, however, only refers to the removal of an action related to bankruptcy from a state court to the federal system. *In re Roper,* 203 B.R. 326, 331 (Bankr.N.D.Ala.1996). In fact, the

common word "removal" has a specific definition in the context of civil procedure and means the movement of an action that originally was filed in the state court system to the federal system. *See generally* 29A *Fed.Proc., L.Ed.* § 69 (1998). Catchpole, filing as an individual not trained in the law, may not have realized that removal is not the appropriate terminology or that § 1452(a) was inapplicable in this instance. The movement of actions between district courts and bankruptcy courts is called "referral" or "reference." *In re Griffith,* 215 B.R. 893, 893 n. 1 (Bankr.M.D.Ala.1997); *In re Roper,* 203 B.R. at 331.

timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.* This provision creates two distinct forms of withdrawal: mandatory and permissive. *In re C–TC 9th Ave. Partnership,* 177 B.R. 760, 762–64 (N.D.N.Y.), *reh'g denied,* 182 B.R. 1 (1995); *In re Am. Body Armor & Equip., Inc.,* 155 B.R. 588, 591 (M.D.Fla. 1993). The first sentence of § 157(d) defines permissive withdrawal, and the second sentence describes mandatory withdrawal. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 762–64. Since Catchpole invokes neither form of withdrawal in his motion, the Court will consider whether withdrawal is appropriate under either type.[2]

 Under either type of withdrawal, the party must make a motion in a timely fashion. The statute provides no additional guidance as to what constitutes a timely motion for withdrawal. *In re Securities Group,* 89 B.R. 196, 197 (M.D.Fla.1988). Some courts have interpreted the provision to mean that the motion must be filed as soon as the basis for withdrawal is known. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 765; *In re Securities Group,* 89 B.R. at 197. Others allow a motion to be filed at any time, so long as it does not create any prejudice to the other party. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 765. It is unclear from the facts before the Court, when Catchpole knew of the basis for removal. However, Defendants do not argue that this motion has caused them any prejudice, so the Court concludes that Catchpole's motion is timely. *See id.*

## A. Mandatory Withdrawal

When interpreting the second sentence of § 157(d), courts have adopted two distinct approaches to determine when mandatory withdrawal is appropriate. One approach is to read the statute liberally and mandate withdrawal whenever the "resolution of a proceeding requires the consideration of both bankruptcy and non-bankruptcy laws." *In re C–TC 9th Ave. Partnership,* 177 B.R. at 763. However, the majority of courts have concluded "that withdrawal is mandatory 'only if the court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-Code statutes' which have more than a de minimis impact on interstate commerce." *Id.* (quoting *In re White Motor Corp.,* 42 B.R. 693, 705 (N.D.Ohio 1984)). Courts that use the "substantial and material" test believe that any other approach would allow § 157(d) to become an "escape hatch" for persons who do not wish to have their claims in bankruptcy court. *Id.; In re Am. Body Armor & Equip.,* 155 B.R. at 591. They merely would have to allege a claim involving non-bankruptcy federal law. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 763; *In re Am. Body Armor & Equip.,* 155 B.R. at 591. Proponents also argue that such an escape hatch is inconsistent with Congressional intent. *In re Am. Body Armor & Equip.,* 155 B.R. at 591; *United States v. ILCO, Inc.,* 48 B.R. 1016, 1021 (N.D.Ala.1985).

 The Court finds that the "substantial and material" test should be utilized to determine when mandatory withdrawal is appropriate. The test is consistent with Congressional intent and has been adopted by other courts in this circuit. *In re Am. Body Armor & Equip.,* 155 B.R. at 591; *ILCO,* 48 B.R. at 1021. This test demands mandatory withdrawal "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws," or when there is a conflict between the bankruptcy and other federal law. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 764 (citing

---

2. Catchpole contends that the Court has accepted jurisdiction by allowing the parties to file motions and by issuing notices. However, these administrative acts are not evidence that the Court has accepted jurisdiction. In many instances, motions are filed and notices issued when the Court lacks or declines to exercise its jurisdiction. Additionally, the law provides for limited instances when the Court may withdraw reference, and waiver is not one of those instances.

*In re Adelphi Inst., Inc.,* 112 B.R. 534, 536–37 (S.D.N.Y.1990)). *See also In re Am. Body Armor & Equip.,* 155 B.R. at 591 (holding that the straight-forward application of federal law does not mandate withdrawal). The mere implication of non-bankruptcy federal law in the proceedings is not sufficient to mandate withdrawal; the resolution of non-bankruptcy law must be essential to the dispute. *See In re C–TC 9th Ave. Partnership,* 177 B.R. at 764; *In re Am. Body Armor & Equip.,* 155 B.R. at 591; *ILCO,* 48 B.R. at 1022.

■ In this case, Catchpole does not allege any violation of non-bankruptcy federal law in Count One. In fact, his only allegation in Count One is that the FAA failed to provide adequate proof to support its claim for civil penalties. The bankruptcy court is not faced with any novel or complex issues of non-bankruptcy federal law. Indeed, the bankruptcy court routinely addresses disputes involving the adequacy of proof for creditor's claims. In light of Catchpole's failure to establish that non-bankruptcy federal law is "substantial and material" to the resolution of Count One, the Court will deny Catchpole's request for mandatory withdrawal from bankruptcy court.

## B. Permissive Withdrawal

■ The decision of whether to grant a motion for permissive withdrawal is within the sound discretion of the district court. *In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir.1990); *In re Moody,* 899 F.2d 383, 386 (5th Cir.1990); *In re Powelson,* 878 F.2d 976, 978 (7th Cir.1989). In order to establish that permissive withdrawal is appropriate, the moving party must demonstrate that sufficient "cause" exists for withdrawal. *In re Parklane,* 927 F.2d at 536; *Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers,* 124

F.3d 999, 1008 (9th Cir.1997); *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2nd Cir. 1993); *In re Pruitt,* 910 F.2d 1160, 1168 (3rd Cir.1990); *In re C–TC 9th Ave. Partnership,* 177 B.R. at 763–65; *In re Am. Body Armor & Equip.,* 155 B.R. at 591. The Eleventh Circuit has never addressed what constitutes "cause" for purposes of this statute, but has commented that it is not an "empty requirement." *In re Parklane,* 927 F.2d at 536. In *In re Parklane,* the Eleventh Circuit was not faced with determining what constitutes sufficient cause for permissive withdrawal, but noted that it would consider such factors as: (1) uniformity and efficiency in the administration of bankruptcy law, (2) prevention of forum shopping, (3) conservation of the parties' resources, and (4) facilitation of the bankruptcy process. *Id.* at 536 n. 5 (citing dicta in *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir. 1985)). Other courts utilize these factors, as well as other considerations such as: (1) whether the claim is core or non-core,[3] (2) efficient use of judicial resources, (3) a jury demand, and (4) prevention of delay. *Security Farms,* 124 F.3d at 1008; *In re Orion Pictures Corp.,* 4 F.3d at 1101; *In re Pruitt,* 910 F.2d at 1168; *In re C–TC 9th Ave. Partnership,* 177 B.R. at 765; *In re Alpha Steel Co. .,* 142 B.R. 465, 472 n. 5 (M.D.Ala. 1992); *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.,* 106 B.R. 367, 371 (D.Del.1989).

■ Catchpole has failed to allege, much less establish, that any cause exists for permissive withdrawal of his claims. In fact, there are numerous reasons why this matter should not be withdrawn. This case has been pending before the bankruptcy court since 1991, where numerous motions have been resolved and hearings have been held. For this Court to withdraw one allegation from the bankruptcy court, at this time, would be very inefficient and a significant waste of judicial resources. The Court would

**3.** Core proceedings are those matters that govern the administration of the debtor's estate. *In re C–TC 9th Ave. Partnership,* 177 B.R. at 765. A non-core proceeding, in contrast, is one "that is not a core proceeding but that is otherwise related to a case under Title 11." 28 U.S.C.A. § 157(c)(1) (1993). *See also In re C–TC 9th Ave. Partnership,* 177 B.R. at 765–66. The determination of whether a proceeding is core or non-core

is left to the bankruptcy court. *Marshall v. City of Atlanta,* 195 B.R. 156, 165 n. 3 (N.D.Ga.1996); *In re C–TC 9th Ave. Partnership,* 177 B.R. at 766. Catchpole has not moved for the bankruptcy court to determine if his claims are core or non-core. Accordingly, the Court will not consider this factor in analyzing the need for permissive withdrawal.

have to familiarize itself with the record in the case and to monitor rulings made by the bankruptcy judge in order to avoid inconsistent results. The parties also would face increased costs by having the case proceed in two forums. Additionally, withdrawal would interrupt the efficient administration of the bankruptcy court. In the absence of any reason to withdraw the claims, it appears to the Court that Catchpole is merely forum-shopping. Such behavior will not be condoned through the permissive withdrawal of Count One.

Moreover, in a case where the party moving for withdrawal has made claims in the bankruptcy court, withdrawal is not appropriate. *In re Beeline Eng'g & Constr., Inc.,* 154 B.R. 790, 793 (S.D.Fla.1993). When a party submits to the jurisdiction of the bankruptcy court, the right to withdraw the action is waived. *In re Haile Co.,* 132 B.R. 979, 980 (Bankr.S.D.Ga.1991). The Adversary Proceeding initially was filed in bankruptcy court, and Catchpole moved to amend the proceeding in that court. By choosing that forum, he has waived the opportunity to have those claims withdrawn to this Court.

## II. *Catchpole's Remaining Motions*

Catchpole has filed the following additional motions in this action: Motion for Declaratory Judgment, Motion for Summary Judgment, Motion for Judicial Notice, and Motion to Strike Defendants' Response to Motion for Summary Judgment. Since the Court is denying Catchpole's Motion to Withdraw Claims, there is no action pending in the Court upon which these motions can be made. Accordingly, Catchpole's remaining motions must be dismissed. *See In re C–TC 9th Ave. Partnership,* 177 B.R. at 766 (dismissing all other pending motions when denying motion for withdrawal).

## CONCLUSION

Having considered fully the positions asserted by the parties, the Court concludes that Catchpole's Motion to Remove Claims from Bankruptcy should be and is hereby **DENIED,** and the Clerk is **ORDERED** to close the case. Catchpole's remaining motions are **DISMISSED** as **MOOT.**

**SO ORDERED.**