In re WI–SKY INFLIGHT, INC., Debtor.

Wi–Sky Inflight, Inc., Movant/Counterclaim Plaintiff,

v.

Michael Leabman, Respondent/Counterclaim Defendant.

Wi–Sky Inflight, Inc., Plaintiff,

v.

Turnstone Capital Management, LLC, Respondent/Counterclaim Defendant.

Wi–Sky Inflight, Inc., Plaintiff,

v.

Vivano Networks, Inc., Respondent/Counterclaim Defendant.

Wi–Sky Inflight, Inc., Plaintiff,

v.

Wivest, LLC, Respondent/Counterclaim Defendant.

No. 11–40490–PWB.

Adversary Nos. 12–04056–PWB, 12–04057–PWB, 12–04058–PWB, 12–04–059–PWB.

Civil Action Nos. 4:12–CV–00248 HLM, 4:12–CV–249 HLM, 4:12–CV–00250 HLM, 4–12–CV–251 HLM.

United States District Court, N.D. Georgia, Rome Division.

Oct. 30, 2012.

Leon Strickland Jones, Leslie Pineyro, Jones & Walden, LLC, Darren W. Penn, Jeffrey R. Harris, Harris Penn Lowry Delcampo LLP, Atlanta, GA, for Plaintiff Movant/Counterclaim Plaintiff.

Thomas Raymond Walker, McGuire Woods LLP, Atlanta, GA, for Respondents/Counterclaim Defendants.

## ORDERS

HAROLD L. MURPHY, District Judge.

This case is before the Court on the Creditors'[1] Motions for Immediate Withdrawal of the Reference ("Motions to Withdraw") of the above-captioned Adversary Proceedings [Docket Entry No. 1].[2]

---

1. For purposes of this Order, the Court will refer to Michael Leabman ("Leabman"), Turnstone Capital Management, LLC ("Turnstone"), Vivano Networks, Inc. ("Vivano"), and WIVEST, LLC ("WIVEST") collectively as the Creditors.

2. The Creditors filed identical Motions in each of the above-captioned cases, and the

## I. Background

On September 14, 2012, the Creditors filed identical Motions to Withdraw the above-captioned Adversary Proceedings in the United States Bankruptcy Court, Northern District of Georgia (the "Bankruptcy Court"). (Docket Entry Nos. 1 at 23.) On September 28, 2012, Wi–Sky Inflight, Inc. (the "Debtor") filed Responses to the Motions to Withdraw (the "Responses") in the Bankruptcy Court. (Docket Entry Nos. 2 at 11.)[3] On October 15, 2012, the Creditors submitted their Reply Briefs in Support of the Motions to Withdraw (the "Reply Briefs") in the Bankruptcy Court. (Docket Entry Nos. 3 at 14.)[4]

The Court received all of those filings on October 15, 2012, and finds that no further briefing will assist in the resolution of this matter, which is ripe for resolution. (Docket Entry Nos. 1, 2, and 3.)

During the past several years, the Debtor, Creditor, and various other parties have been embroiled in the following litigation, spanning multiple forums, regarding various intellectual property and related disputes:

1. *Wi–Sky Inflight Inc. v. Michael Leabman, Vivano Networks, Inc., V-Ten Capital Management, LLC, Turnstone Capital Management, LLC, Richard L. Sharp, James P. Karides, Ronald Wooldridge, Marc J. Lamagna, and Craig Samuel,* Civil Action No.2010–CV190243 (Ga.Super.Ct. filed Aug. 27, 2010);

2. *Lufthansa Systems Infratec GmbH v. Wi–Sky Inflight, Inc., et al.* Civil Action No. 3:10–cv–745–JAG (E.D.Va. filed Oct. 15, 2010);

3. *WIVEST, LLC v. Wi–Sky Inflight, Inc. and Wi–Sky Networks, LLC,* Case No. 3:10–cv–776 (E.D.Va. filed Oct. 26, 2010);

4. *Leroy A. Leabman, Trustee of the Leabman Family Trust, dated Sept. 22.1994, Michael Leabman, and Vivano Networks, Inc. v. Grant Sharp, Daniel S. Katz, Wi–Sky Inflight, Inc., and Does 1–5,* Case No. C11–00152 (Calif.Super.Ct. filed Jan. 20, 2011) (the "California Securities Litigation");

5. *Turnstone Capital Management, LLC v. Wi–Sky Inflight, Inc.,* Case No. RG–10–552386 (Calif.Super.Ct. filed Dec. 21, 2010);

6. *Turnstone Capital Management, LLC v. Wi–Sky Inflight, Inc.,* Case No. CV 10–6006873 (Super.Ct.Conn. filed Sept. 27, 2010); and

7. *Wi–Sky Inflight, Inc. v. Michael Leabman, et al,* Case No. CL 11005148–00 (Richmond, Va. Circuit Ct. filed Nov. 14, 2011).

(Motions to Withdraw at 5–6; Responses at 7–8.)

On February 22, 2011, Debtor filed the above-captioned bankruptcy case (the "Bankruptcy Case"). (Motions to Withdraw at 5; Responses at 8.) The Creditors each filed a proof of claim (the "Proofs of Claim") in the Bankruptcy Case based upon the various claims the Creditors have asserted against Debtor in the myriad pieces of still-pending litigation. (Motions to Withdraw at 6; Responses at 8.)[5] On

---

Clerk docketed them as Docket Entry No. 1 in each case.

**3.** The Debtor's Responses are identical in each of the above-captioned cases, and the Clerk docketed them as Docket Entry No. 2 in each case.

**4.** The Creditors' Reply is identical in each of the above-captioned cases, and the Clerk docketed them as Docket Entry No. 3 in each case.

**5.** It is unclear from the Bankruptcy Court's docket and the parties' filings when the Creditor filed the Proofs of Claims.

July 18, 2012, Debtor commenced the above-captioned Adversary Proceedings against the Creditors, objecting to the Proofs of Claim, making a jury demand, and filing counterclaims to the Proofs of Claim (the "Counterclaims"). (*Id.; Id.*) On September 5, 2012, the Creditors filed a Motion to Dismiss for each of the Counterclaims (the "Motions to Dismiss"). (Motions to Withdraw at 6.) [6]

The relevant Proofs of Claim filed by the Creditors and Counterclaims asserted by the Debtor in the Adversary Proceedings are as follows:

1. **Leabman.** Leabman filed a Proof of Claim for an undetermined amount for the claims related to the Georgia Superior Court Litigation and the California Securities Litigation, including libel per se, fraud, negligent misrepresentation, and violations of California's blue-sky laws. On July 18, 2012, Debtor commenced Adversary Proceeding No. 12–04–056–PWB against Leabman asserting state law-based counterclaims for, among other counts, breach and repudiation of a contractor agreement, civil conspiracy, breach of fiduciary duty, conversion, fraud, and turnover.

2. **Turnstone.** Turnstone filed a Proof of Claim totaling $386,611.39, comprised of a secured claim of $220,000 for the alleged nonpayment of a secured loan (the subject of the Connecticut Litigation), and an unsecured claim of $166,611.39 as assignee of a claim for unpaid services rendered and related amounts (the subject of the Alameda Litigation). On July 18, 2012, Debtor commenced Adversary Proceeding No. 12–04057–PWB against Turnstone asserting state law-based counterclaims for, among other counts, civil conspiracy, tortious interference, and turnover.

3. **Vivano.** Vivano filed a Proof of Claim for an undetermined amount for various claims related to the Georgia Superior Court Litigation and the California Securities Litigation, including libel per se, fraud, negligent misrepresentation, and violations of California's blue-sky laws. On July 18, 2012, Debtor commenced Adversary Proceeding No. 12–04058–PWB against Vivano asserting state law-based counterclaims for, among other counts, breach and repudiation of a contractor agreement, civil conspiracy, breach of fiduciary duty, conversion, fraud, and turnover.

4. **WIVEST.** WIVEST filed a Proof of Claim for $83,546.66 for alleged nonpayment of a secured loan (the subject of the WIVEST Loan Litigation). On July 18, 2012, Debtor commenced Adversary Proceeding No. 12–04059–PWB against WIVEST asserting state law-based counterclaims for, among other counts, civil conspiracy, and tortious interference.

(Motions to Withdraw at 7–8.)

Debtor, Turnstone, and another creditor have filed three competing bankruptcy plans (the "Plans") in the original Bankruptcy Case. (*Id.* at 8.) The Bankruptcy Court determined that solicitation of votes for the Plans—a prerequisite to the Bankruptcy Court considering which, if any, of the Plans to approve—should not go forward until there has been a determination of whether the Creditors' Proofs of Claim should be allowed. The Creditors whose Proofs of Claim were allowed would then vote on the Plans. (*Id.*)

The Debtor asserts that the damages it incurred for the matters covered by the Counterclaims may be set off against the amounts the Creditors seek in the Proofs of Claim. (*Id.;* Responses at 9.) The

**6.** The Bankruptcy Court's docket confirms these assertions.

Debtor also contends that the amounts owed pursuant to the Counterclaims exceed any amounts owed to the Creditors pursuant to the Proofs of Claim. Therefore, the Debtor argues, the Proofs of Claim should be disallowed. (Motions to Withdraw at 8.) For those reasons, "[a]dminstration of the bankruptcy cannot go forward without consideration of the [A]dversary [P]roceedings." (Responses at 9.)

The Creditors agree with the Debtor that, to resolve the parties' disputes, a court must fully adjudicate the Adversary Proceedings. (Motions to Withdraw at 8.) Arguing that "the fastest, most-efficient manner to fully adjudicate the Adversary Proceedings would be to withdraw the reference to the [Court]," the Creditors submitted the instant Motions to Withdraw. (*Id.*)

## II. Motion to Withdraw Reference Standard

Under Local Rule 83.7A., the Bankruptcy Court has concurrent original jurisdiction with the Court over all civil proceedings arising under title 11 or arising in or related to cases under title 11. N.D. Ga. R. 83.7A. ("Each bankruptcy judge shall perform the duties set forth and may exercise the authority conferred in Section 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353, 98 Stat. 333 (July 11, 1984) (to be codified as 28 U.S.C. §§ 151–58) with respect to any action, suit, or proceeding ... except as otherwise provided by law or by rule or order of this court."). Under 28 U.S.C. § 157(d), however, parties can move to withdraw matters referred to the Bankruptcy Court.

■■■ Section 157(d) contemplates two categories of proceedings subject to withdrawal from the bankruptcy court: mandatory and discretionary. 28 U.S.C. § 157(d). A district court must grant a motion to

withdraw with respect to a proceeding that "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* This category generally is reserved for cases that require substantial and material consideration of federal statutes outside the Bankruptcy Code. *In re Horizon Air, Inc.,* 156 B.R. 369, 373 (N.D.N.Y.1993). The Creditors do not contend that the underlying case fits into this category. The Court also may allow for permissive withdrawal of the reference "for cause shown." 28 U.S.C. § 157(d). The burden is on the movant to "demonstrate that sufficient 'cause' exists for withdrawal." *Lubin v. Skow,* No. 1:09–CV–1155–RWS, 2009 WL 2175857, at *2 (N.D.Ga. July 21, 2009) (quoting *In re TPI Int'l Airways, Inc.,* 222 B.R. 663, 668 (S.D.Ga.1998)). "The decision of whether to grant a motion for permissive withdrawal is within the sound discretion of the district court." *Id.* (quoting *In re TPI Int'l Airways,* 222 B.R. at 668).

■■■ Section 157(d) does not define "cause shown." *Id.* The United States Court of Appeals for the Eleventh Circuit also has not specifically defined the standard, although it has made clear that it "is not an empty requirement." *In re Parklane/Atlanta Joint Venture,* 927 F.2d 532, 536 (11th Cir.1991). Instead, the Eleventh Circuit weighs several factors: whether withdrawal would (1) advance uniformity in bankruptcy administration; (2) decrease forum shopping and confusion; (3) promote the efficient use of the parties' resources; and (4) facilitate the bankruptcy process. *In re Parklane,* 927 F.2d at 536 n. 5; *accord In re Simmons,* 200 F.3d 738, 742 (11th Cir.2000).

The Eleventh Circuit and district courts therein have treated these factors as nonexhaustive. *Lubin,* 2009 WL 2175857, at *2; *accord 9 Collier on Bankruptcy,*

¶ 5011.01[1][b] (15th ed. 1996). In other words, there is no mechanical formula in deciding whether to withdraw the reference. With these considerations in mind, the Court turns to the Creditors' Motions to Withdraw.

## III. Discussion

### 1. Balancing the Section 157 Factors

The Creditors argue that withdrawal is warranted based on the four Eleventh Circuit factors, whether the Bankruptcy Court can issue a final order on claims and there has been a jury demand, and at least one factor that the Eleventh Circuit, nor any district court therein, appears to have utilized in conducting the Section 157 inquiry: whether the claims are legal or equitable. (Motions to Withdraw at 10–11.)[7] The Debtor argues that the Creditors have not met their burden to show that withdrawal is warranted based on the Eleventh Circuit factors.

 Based only on the four factors the Eleventh Circuit has used in conducting the Section 157(d) analysis, the Court agrees with the Debtor that immediate withdrawal of the reference is not warranted.

### A. Whether Withdrawal will Promote the Economical Use of the Parties' Resources

Based on the Eleventh Circuit's case law, this factor is the most important for the Court in deciding whether to exercise its discretion to withdraw the reference. Although the matter is close, the Court agrees with the Debtor that denying the Motions to Withdraw will best promote the efficient use of the parties' resources.

As the Debtor points out, the Bankruptcy Case has been pending for more than eighteen months. (Responses at 8.) The Bankruptcy Court has been supervising the discovery process that already has commenced, and has made oral rulings about the timing of certain discovery matters and about motions practice, which the parties are currently memorializing into a written scheduling order. (*Id.*) The Bankruptcy Court also has determined that it will not solicit votes for the Bankruptcy Plans until the Adversary Proceedings are resolved.

In their Reply Briefs, the Creditors argue that the Bankruptcy Court merely has issued one oral ruling at an August 2012 conference, deferring to the parties' judgment as to discovery scheduling. Further, "[w]hile discovery has commenced, it remains in the early stages." (Reply at 3.) "All that has occurred to date is that the Creditors have responded to written discovery and the parties have been discussing potential deposition dates. There have been no discovery disputes thus far requiring court intervention. Accordingly, the Bankruptcy Court has had zero substantive involvement in any discovery issues." (*Id.*)

The Court finds that the Creditors belittle the work the Bankruptcy Court has done thus far. The Court agrees that the Bankruptcy Court "has become quite familiar with the facts and issues involved in this case." (Responses at 9.) Most important, the Court agrees that the Bankruptcy Court is best positioned to continue its

---

7. The Creditors conflate two of the Eleventh Circuit factors—whether withdrawal will promote uniformity in bankruptcy administration and facilitation of the bankruptcy process— stating the factor as: whether withdrawal will promote uniformity in bankruptcy adminis- trations. (Motions to Withdraw at 11.) Because the Eleventh Circuit does so, this Court will treat these as distinct factors, and the Court will give the benefit of the doubt to Creditors in parsing their arguments on these factors.

work in sorting through this complicated matter and that "[w]ithdrawing this case from [its] docket would waste the time and effort that [the Bankruptcy Court] and the parties already have put into these proceedings and would necessitate further delays while the district court gets up to speed." (*Id.* at 9.)

As both parties agree, the Counterclaims (and the Creditors' Motions to Dismiss them) relate directly to the Proofs of Claim, which relate to the Bankruptcy Case overall—and the Bankruptcy Court ultimately is best situated to administer the Bankruptcy Plan. The Court therefore finds that it will be more efficient for the parties to litigate all of these inter-related matters before the Bankruptcy Court.

The parties' main disagreement about this efficiency factor relates to a sub-issue implicitly tied up therein: whether the Bankruptcy Court has constitutional authority to issue final judgment on the Debtor's Counterclaims. Although the Eleventh Circuit never has expressly considered this question in conducting the Section 157(d) inquiry, the Court finds that this question implicitly affects whether withdrawal promotes or obstructs the efficient use of the parties' resources.[8] Further, the Court agrees with the Creditors that the Bankruptcy Court lacks the constitutional authority to finally resolve the Counterclaims.

In *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2608, 2620, 180 L.Ed.2d 475 (2011), the Supreme Court made clear that bankruptcy courts could have the statutory authority to enter final judgment on a claim but lack the constitutional authority to do so. In *Stern,* the Supreme Court agreed that the bankruptcy court had statutory authority under Section 157(b)(2) to enter final judgment on the counterclaims filed by the estate. However, the court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S.Ct. at 2620.

Here, the Bankruptcy Court also has clear statutory authority to enter final judgment on the Debtor's Counterclaims because they are "against persons filing claims against the estate," the Creditors. 28 U.S.C. § 157(b)(2). However, like the bankruptcy court in *Stern,* the Bankruptcy Court does not have constitutional authority to enter final judgment on these Counterclaims because they rest on state law and would not be fully resolved in ruling on the Creditors' Proofs of Claim.[9] Thus, the Bankruptcy Court cannot finally resolve Debtor's Counterclaims.

Because the Bankruptcy Court cannot issue a final judgment on the Debtor's Counterclaims, the Court agrees with the Creditors that some of the parties' re-

---

**8.** District courts in the Eleventh Circuit have considered a similar question in weighing the efficiency factor: whether a claim at issue is core or non-core under Section 157. *E.g., In re TPI Int'l Airways,* 222 B.R. 663, 668 (S.D.Ga.1998); *see In re Ernie Haire Ford, Inc.,* 2012 WL 4356161, at *1 (M.D.Fla. Sept. 24, 2012) ("In considering whether to withdraw the reference, a district court 'should first evaluate whether the claim is core of non-core' because 'questions of efficiency and uniformity' depend largely on the character of the proceeding." (citations omitted)). The Court notes that this statutory question is

merely a precursor to the constitutional question, which is most persuasive in considering the efficiency gains and costs of withdrawing the reference.

**9.** The Creditors provided a detailed outline of their Proofs of Claim and the Debtor's Counterclaims and persuasively detailed the many ways in which the allegations in those matters do not overlap completely. *See* Reply Briefs at 9–12. Because the Court agrees with the Creditors on this point, the Court declines to detail those distinctions.

sources could be doubly spent in litigating the Counterclaims. If the Bankruptcy Court held against the Creditors on any or all of their Motions to Dismiss the Counterclaims, for example, the Creditors could appeal that finding to this Court, which would review the matter de novo. *See* 28 U.S.C. § 157(c)(1) (noting that bankruptcy courts may hear a non-core proceeding that is related to a case under title 11 and that district courts review *de novo* the bankruptcy court's findings in those cases if parties object); *Stern*, 131 S.Ct. at 2620–21 (analogizing the process of reviewing decisions on claims on which bankruptcy courts lack the constitutional authority to enter final judgments to those covered by Section 157(c)(1)). Although there would be some duplication of the parties' efforts in such a scenario, the Court finds that this would not be so inefficient as to favor withdrawal of the reference.[10] Rather, the Court finds this hypothetical process similar to that used by magistrate courts and district courts in resolving pre-trial mo-

tions in a wide variety of cases, which is not an inefficient use of the parties' resources. Indeed, even if the district court reviews de novo those magistrate court findings—as it would the Bankruptcy Court's orders on the Counterclaims here—the parties still benefit from the opportunity to litigate the issue, which affords the implicit chance of settling or simplifying the matter, and the Court still benefits from knowing what the initial adjudicator did.

Ultimately, even if there is some duplication of the parties' efforts in resolving the Counterclaims, the Court still finds that the parties' resources are best served by leaving this matter in the Bankruptcy Court, which has been embroiled in this case for almost two years and which best understands how the Proofs of Claim, the Counterclaims, and the Bankruptcy Plans interact with one another because of its experience in this case and others similar to it.[11] In short, the Court finds that the

10. The Court notes that a district court within the Eleventh Circuit has remarked that the inability to enter final judgment on a matter weighs persuasively in favor of permissive withdrawal. *Control Ctr., LLC v. Lauer*, 288 B.R. 269, 275 (M.D.Fla.2002) (noting that, because a district court is obligated to review de novo the findings of a bankruptcy court on non-core matters, a determination that a proceeding is non-core [under Section 157] weighs in favor of transferring the matter to a district court). The Court also notes, however, that the district court in *Lauer* did not say that district courts were bound to withdraw cases involving non-core matters, and, more importantly, Section 157 nor the Eleventh Circuit so requires. As it did in *Lauer*. the permissive withdrawal question still rests in the district court's discretion based on the facts involved. Accordingly, the Court notes one major factual distinction between *Lauer* and this case: in *Lauer*. the motion to withdraw reference came a mere seven months after the bankruptcy case began; here, the Creditors' Motion came almost two years after the Debtor's bankruptcy petition. 288 B.R. at 271–72.

11. The Debtor also argues that Leabman's Proof of Claim relies on an as-yet-unproven claim for damages that the Leabman family trust has asserted in the California Securities litigation. (Responses at 9.) Because "[t]hat litigation is part and parcel of the conspiratorial conduct at issue in the [A]dversary [P]roceedings [ ] but the [t]rust is not a party to the [A]dversary [P]roceedings, so its [P]roof of [C]laim will remain before the [B]ankruptcy [C]ourt", the Debtor argues that immediate withdrawal of the reference will result in "two courts addressing some of the underlying issues simultaneously, causing a waste of resources in both courts, raising the potential for inconsistent results, and increasing the risk of confusion." (*Id.* at 9–10.)

The Creditor calls this argument a "red herring" and contends that the Leabman Proof of Claim, and the California Securities litigation more broadly, are unrelated to the Counterclaims or, in the alternative, that the Court has the power to finally decide the Proof of Claim in the California litigation alongside the Adversary Proceedings here (because Leabman is a party in both cases). (Reply Briefs at 5–7.)

Bankruptcy Court has the expertise to dispense with this case in the most efficient manner and therefore keeping the Adversary Proceedings in the Bankruptcy Court best protects the parties' resources.[12]

## B. Whether Withdrawal Will Promote Uniformity in Bankruptcy Administration

This factor intertwines closely with the efficiency factor and the Court similarly finds that it supports leaving the reference in Bankruptcy Court. Although the Creditors argue that this factor supports withdrawal because the Bankruptcy Court has had only a few months to review the Counterclaims and associated motions, the Court notes that the Bankruptcy Court has been presiding over the overall Bankruptcy Case—the matter most important to the administration of bankruptcy—for a much longer time period. The Court further finds that even the two months between the filing of the Counterclaims and

---

The Court notes this argument because it is indicative of the complicated state of the Adversary Proceedings in this case as well as related ones between these parties. That state of affairs is exactly why the Court believes that it would be more efficient for a single decisionmaker to continue to handle this case; the Court just disagrees with the Creditors that it should be this Court. Instead, the Court finds that it would be more efficient for the Bankruptcy Court to continue to handle this complex case, as it has for the past eighteen months.

12. Although this is not a factor the Eleventh Circuit has used in conducting the Section 157 inquiry, the Creditors also argue that the jury demands made in the Adversary Proceedings affect this efficiency factor. (Motions to Withdraw at 11–13.) In particular, the Bankruptcy Court cannot conduct jury trials without the consent of all parties, which is lacking in this case. *See* Motions to Withdraw at 12; N.D. Ga. R. 83.7 B. ("In accordance with 28 U.S.C. § 157(e), the bankruptcy judges of this court are specially designated to conduct jury trials where the right to a jury trial applies. This jurisdiction is subject to the express consent of all parties...."). According to the Bankruptcy Court's Local Rules:

If the parties do not consent to jury trial in Bankruptcy Court and if a timely demand has been made in a case triable by jury, the Bankruptcy Judge shall transfer the adversary proceeding to the District Court when the Bankruptcy Judge determines that the case is ready for trial. Prior to transferring the case, the Bankruptcy Judge shall Rule on all discovery motions, other pretrial motions, and summary judgment motions, as provided by law, and shall enter the pretrial order.

N.D. Ga. Bankr.R. 9015–3.

Thus, if the Adversary Proceedings reach the trial stage, withdrawal of the reference will be *mandatory* at the time under the Bankruptcy Court's Local Rules. However, the Court notes that withdrawal *prior to that* time remains permissive and, most importantly, Local Bankruptcy Court Rule 9015–3 contemplates that the Bankruptcy Court will resolve pre-trial matters prior to withdrawal. *See also In re Noble*, 2009 WL 6499363, at *6 (Bankr.N.D.Ga. Aug. 21, 2009) ("[T]he fact that a jury trial is required is not a basis for ... the immediate withdrawal of the reference by the district court [because t]he Court's local rules provide a procedure applicable to cases in which a jury trial must be held and in which the parties do not consent to the Court holding such a trial.").

The Court therefore still finds that the Bankruptcy Court is in the best position to continue resolving all pre-trial issues. The Court also agrees with the Debtor's analogy of the Bankruptcy Court to magistrate judges regarding the jury demand factor. In other words, the Bankruptcy Court conducting pretrial matters in the Adversary Proceedings is not meaningfully different from magistrate judges overseeing pre-trial matters in eventual jury trials before district courts. Thus, the Court finds that the jury demand does not tip the scales on the efficiency factor. *See In re Tucker*, 2012 WL 4090677, at *3 (Bankr. S.D.Fla. Sept. 17, 2012) ("Maintaining the referral to the Bankruptcy Court for adjudication of all pretrial matters does not curtail any party's Seventh Amendment right, but does 'promote[] judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them." (alterations in original) (citations omitted)).

Motions to Dismiss and the Motion to Withdraw Reference is not an insignificant period of time, and refuses to accept the Creditors' speculation about what the Bankruptcy Court has been able to do in that time period, depicting their work on the Adversary Proceedings as insubstantial.

Further and most importantly, the Court notes that the uniform administration of *bankruptcy* is what matters most in weighing this factor. And the Court reiterates its belief that leaving the entire matter in the Bankruptcy Court will best support a *uniform* resolution of the bankruptcy process. Even if the Court may ultimately resolve the Counterclaims and associated Motions, and even any jury trial related to the Counterclaims, the Bankruptcy Court remains the forum with the expertise and the statutory charge to resolve the ultimate matter at issue: the Debtor's Bankruptcy Plan. Accordingly, the Court finds that leaving all associated matters in the Bankruptcy Court's control will best promote the uniform resolution of the Debtor's bankruptcy process.

### C. Whether Withdrawal Will Decrease Forum Shopping and Confusion

The Court's research reveals that the Eleventh Circuit and district courts therein rarely emphasize this element in weighing permissive withdrawal, nor have those courts made much effort to define it. Typically, those courts just list this as a factor and rely on the others in reaching their conclusions. *E.g., In re Simmons,* 200 F.3d 738, 742 (11th Cir.2000); *In re Parklane,* 927 F.2d at 536 n. 5; *Lubin,* 2009 WL 2175857, at *2. The *In re TPI Int'l Airways* court provides the most guidance on it, though it only addresses the forum-shopping element. 222 B.R. at 668–69. There, the court held that in the absence of any argument in favor of the other factors, and the efficiency factor particularly, the court only could conclude that the movant for withdrawal was "merely forum-shopping." *Id.* at 669. The court added that "[s]uch behavior will not be condoned through [ ] permissive withdrawal...." *Id.*

The parties cite no binding case law to support their arguments on this factor; instead, they haggle over a bankruptcy case from the United States Bankruptcy Court for the Southern District of Texas, *In re EbaseOne Corp.,* 2006 WL 2405732 (Bankr.S.D.Tex. June 14, 2006). There, because the dispute concerned a non-core proceeding over which the bankruptcy court could not enter a final judgment and the bankruptcy court had not yet familiarized itself with the underlying matters in the case, the court construed the Motions to Withdraw as "nothing more than a reasonable effort to have a non-core proceeding litigated with a minimum time and expense," not forum shopping. 2006 WL 2405732, at *3–4.

Here, in contrast to *In re EbaseOne Corp.,* the Bankruptcy Court has had time to familiarize itself with the Bankruptcy Case and the Adversary Proceedings and, indeed, has made rulings related to them. Also, although it is true that the Bankruptcy Court here, like *In re EbaseOne Corp.,* lacks the constitutional authority to finally resolve the Counterclaims, the Counterclaims are core proceedings, under Section 157, and the Bankruptcy Court retains the authority to finally resolve the other portions of the Bankruptcy Case.

Those distinctions aside, the principles of *In re EbaseOne Corp.* and, more, *In re Int'l Airways* convince the Court that the Creditors are not merely forum shopping. The Creditors, unlike the *In re Int'l Airways* movant for immediate withdrawal, have supported their motion with colorable

arguments in favor of withdrawal, although the Court ultimately rejects them.

Even if the Creditors are not merely seeking to forum shop, however, the Court still believes that declining to withdraw the reference will best discourage forum shopping. Rejecting the Motions to Withdraw here will send a message to future litigants, and the parties here, that it takes more than what the Creditors have argued to withdraw a reference otherwise validly situated in the Bankruptcy Court.

In addition, the Court finds that rejecting the Motions to Withdraw will reduce confusion in this case. Because of how the Adversary Proceedings relate to and affect the Bankruptcy Case, and even other cases like the California Securities litigation described *supra* Part III.1.A, keeping the reference in the Bankruptcy Court creates the best chance for resolving the myriad issues at stake with minimal confusion.

### D. Whether Withdrawal Will Promote the Facilitation of the Bankruptcy Process

Although the Eleventh Circuit notes this as a separate factor to mull in conducting the Section 157 inquiry, the Court finds that its conclusion regarding the first two factors discussed *supra* Part III.1.A–B—efficiency and the uniform administration of the bankruptcy process—dictate the outcome on this factor, too. As noted *supra* those sections, although leaving the reference in the Bankruptcy Court carries the potential for some back-and-forth between the Bankruptcy Court and this Court on the Counterclaims and associated motions, the Court finds that the Bankruptcy Court still has the background in this case and the general expertise to best push the parties toward resolving their disputes and the Debtor's bankruptcy, more broadly.

Further, there is no evidence that the Bankruptcy Court is handling the Bankruptcy Case improperly, and withdrawing the reference would "not facilitate the bankruptcy process." *In re Simmons*, 200 F.3d at 742. Instead of waiting for this Court to review the contentions in the Adversary Proceedings, let alone the matters involved with the Bankruptcy Case, the parties could be continuing the process they have been embroiled in for almost two years before the Bankruptcy Court, the forum best suited ultimately to resolve the bankruptcy process.

For the reasons discussed above, the Court finds that any minor gains that could be realized by immediately withdrawing the Counterclaims and the entire reference pale in comparison to the ultimate benefits of leaving it with the Bankruptcy Court.

### E. Conclusion

After weighing the factors the Eleventh Circuit has identified as relevant to the Section 157(d) permissive withdrawal inquiry, the Court finds that the Creditors have failed to show that the Court should immediately withdraw the reference. Because leaving the reference with the Bankruptcy Court supports the most efficient use of the parties' resources, the uniform administration of the bankruptcy process, and the facilitation of the bankruptcy process, and will best discourage forum shopping and reduce confusion, the Court declines to withdraw the reference.

### IV. Conclusion

ACCORDINGLY, the Court **DENIES** the Creditors' Motions to Withdraw [Docket Entry Nos. 1] and **DIRECTS** the Clerk to **CLOSE** the cases associated with those Motions. The Court **DIRECTS** the Clerk

to re-submit this matter to the Bankruptcy Court for appropriate proceedings therein.

IT IS SO ORDERED.